UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHERIE L. BAUGHER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case Number 3:02cv0046AS |
| DEKKO HEATING TECHNOLOGIES, | ) ) ) |
| Defendant. | ) |

## *MEMORANDUM AND ORDER: SUMMARY JUDGMENT*

Defendant, DEKKO HEATING TECHNOLOGIES ("DEKKO") has filed a motion for summary judgment in this case, which arises under the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.* ("FMLA"). Plaintiff, SHERIE L. BAUGHER ("BAUGHER"), filed her Response and oral argument was heard on the motion in South Bend, Indiana on May 28, 2003. A Motion to Strike portions of Plaintiff's Affidavit also was filed by Defendant. Having taken the matter under advisement, the Court is prepared to rule on the motions.

## *FACTS*

BAUGHER was the plant manager for DEKKO from April, 1998 until her termination on March 20, 2000. Defendant's Memorandum Supporting Summary Judgment at 1, 5. DEKKO required that its plant managers maintain high visibility during the workday's three shifts, have an in-plant presence on the weekends when other workers were present, and maintain consistent work hours with a minimum nine-hour minimum block in the plant. Id. at 2. DEKKO discussed with BAUGHER its concerns about her work performance at regular meetings, specifically raising her lack of visibility in the plant, her attendance problems and complaints regarding her lack of availability to those she supervised. Id.

DEKKO was so dissatisfied by BAUGHER's poor job performance in that position that in the Fall of 1999, her supervisors instructed her to devise a plan for improved performance in her plant, including specific goals and deadlines. Id. at 2. BAUGHER at one point told Mary Gerard, DEKKO's Human Resources Manager and personal friend of Plaintiff's, that she felt "overwhelmed" by her work duties. Id.

BAUGHER requested and was granted FMLA leave due to stress and depression. Her period of leave began in December, 1999. By mid-January, 2000, Plaintiff had returned to full duties at the plant. Id. at 2-3. Upon her return, on January 31, 2000, DEKKO management presented BAUGHER with a memorandum that (1) updated her on developments during her absence, and (2) reviewed job performance areas where DEKKO expected improvement from BAUGHER. Id. at 3. DEKKO management specifically informed BAUGHER that they expected her to improve her overall performance, especially in terms of her visibility within the plant. Id.

On March 6, 2000, DEKKO management conducted an annual review of her job performance. Id. According to that review, BAUGHER had shown improvement in certain duties, but the review made clear that more improvement was needed in terms of her "overall rating." Id. at 3.

DEKKO contends that, following the March 6, 2000 review, complaints regarding Plaintiff's job performance increased. Id. at 3. In mid-March, DEKKO management decided to suspend BAUGHER's employment in response to these complaints. Id.

On March 17, 2000, Plaintiff called DEKKO's second shift supervisor, John Slagle, and asked that he lie about her whereabouts on that date. Plaintiff admits that she was untruthful but contends that she asked him only to lie if her girlfriend called the plant to

-2-

speak with her. Plaintiff's Response at 6-7. DEKKO contends that Plaintiff requested Slagle to inform anyone who called for her that she was at work and unable to come to the telephone, although she was not in fact at work. Defendant's Memorandum at 4. According to DEKKO, this incident occurred before the paperwork necessary for her suspension was completed. Id. After learning of Plaintiff's request that Slagle lie about her absence from work, DEKKO terminated BAUGHER. Id.

BAUGHER claims that she "gave notice" of an upcoming back surgery to DEKKO. Plaintiff's Response at 1. Plaintiff does not state that she complied with the FMLA requirements regarding provision of notice of an upcoming leave to DEKKO. She does not set forth the specific steps she took to provide notice.[1] Instead, Plaintiff states that she had several tests that preceded the back surgery. Id. at 4. (Plaintiff did undergo back surgery on April 17, 2000. Id. at 4.) BAUGHER claims she was performing her job in a satisfactory manner and that her performance evaluation on March 6, 2000 was "positive." Id. She claims that DEKKO terminated her for taking FMLA leave in December, 1999 and because she planned to take additional FMLA leave at some future date.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*,

---

[1] As evidenced in Plaintiff's deposition, DEKKO apparently had required steps for obtaining FMLA leave that required the completion of paperwork, and Plaintiff ensured that the requirements were met in order to obtain her period of FMLA leave that began December, 1999. BAUGHER dep. at 27-28, lines 9 through 22.

-3-

984 F.2d 762 (7th Cir. 1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[2] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).

---

[2]The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir. 1994), *cert. denied*, 513 U.S. 1083 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir. 1991), *reh'g denied*, 1993 WL 518446. Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55.

## ANALYSIS

The FMLA applies to any man or woman who has worked at least 1,250 hours a year at a firm employing 50 or more employees at least 20 weeks of the year. 29 U.S.C. §2611(2), (4); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1998). The Seventh Circuit has stated of the FMLA:

> The FMLA was enacted to help working men and women balance the conflicting demands of work and personal life. It does so by recognizing that there will be times in a person's life when that person is incapable of performing her work duties for medical reasons. Whether these medical reasons take the form of one discrete illness, such as cancer, or the form of several different and seemingly unrelated illnesses all afflicting a single individual at the same time...is of no moment to the purposes of the FMLA.

*Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997). It has also written:

> The FMLA establishes **two categories of broad protections** for employees. First, the FMLA contains prescriptive protections that are expressed as substantive statutory rights. The Act provides eligible employees of a covered employer the **right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition as defined by the Act.**[3] After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and term of employment that existed

---

[3] There is not question that Plaintiff was permitted to take a leave of absence from work in December 1999 – an exercise of her substantive statutory right. Instead of claiming a denial of a substantive right, Plaintiff's claim is one of retaliation for exercising her substantive right.

> prior to the exercise of the leave. To insure the availability of these guarantees, the FMLA declares it **unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided.**
>
> When an employee alleges a deprivation of these substantive guarantees, the employee must demonstrate by a preponderance of the evidence only the entitlement to the disputed leave. In such cases, the intent of the employer is immaterial.
>
> In addition to the substantive guarantees...the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act. Specifically, **an employer is prohibited from discriminating against employees who have used FMLA leave.** An employer may not consider the taking of FMLA leave as a negative factor in employment actions.
>
> **When an employee raises the issue of whether the employer discriminated against an employee by taking adverse employment action against the employee for having exercised an FMLA right, the question of intent is relevant. The issue become whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus.**

King v. Preferred Technical Group, 166 F.3d 887, 890-891 (7th Cir. 1998) (citations omitted) (emphasis supplied).

In King, the Court held that, in the absence of direct evidence of discrimination, the McDonnell Douglas[4] burden-shifting framework would apply to claims that an employer discriminated against an employee exercising rights guaranteed by the FMLA. Id. at 891-92. In this regard, to prove an employer discharged an employee in retaliation for engaging in a protected activity, the plaintiff must initially set forth a prima facie case of prohibited discrimination. Id. To establish a prima facie case, a plaintiff must establish that: (1) the plaintiff engaged in a protected activity; (2) the employer took adverse employment action

---

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06, 93 S. Ct. 1817 (1973).

against the employee; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Id.*[5] To demonstrate the "causal link," the employee must demonstrate that the employer would not have taken the adverse employment action but for the employee's protected activity. *Id.* Upon the establishment of a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant carries the burden of production, the presumption raised by the prima facie case is rebutted, and drops from the case. *Id.* The plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue. At all times throughout this burden-shifting approach, the plaintiff retains the ultimate burden or persuasion. *Id.* As to the third step of the analysis, the plaintiff must produce evidence from which a rational fact finder could infer that the employer engaged in intentional discrimination on the basis of the plaintiff's protected action. *Id.* The plaintiff must proffer significantly probative admissible evidence showing that the employer's articulated reason for the discharge was a pretext for discrimination. *Id.* A reason cannot be proved to be a pretext for discrimination unless it is shown *both* that the reason was false, and that discrimination was the real reason. *Id.*

---

[5]Plaintiff articulates a curious version of the *McDonnell Douglas* burden-shifting test as it applies to FMLA claims. Plaintiff claims that her evidence shows that (1) she requested FMLA leave by giving notice of a future back surgery; (2) she suffered an adverse employment action; (3) she was performing her job in a satisfactory manner; and (4) she was treated less favorably than similarly-situated employees. Plaintiff's Response at 5. Except as to her allegations at (1), Plaintiff has articulated the standard of analysis under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq.*; *see also Horwitz v. Bd. of Education of Avoca School Dist. No. 37*, 260 F.3d 602, 609 (7th Cir. 2001). This Court's Opinion articulates the correct burden-shifting analysis under *McDonnell Douglas*.

(citations and quotations omitted).

The third element can be satisfied by reference to a temporal proximity between the employee taking the protected leave and her termination. *King* at 893. That link may be established by a showing that the discharge took place "on the heels of" protected activity. Id. In *King*, "on the heels of" meant that the termination occurred one day after the employee completed her leave of absence under the FMLA. *Id.*

The employer's burden, once the prima facie case has been established, is to raise a genuine issue of fact as to whether it discriminated against the plaintiff in its articulation of a legitimate, non-discriminatory reason for the termination. *King* at 893. In determining whether there is a retaliation claim under the FMLA, the Court is mindful that an employee may be terminated for poor performance when she would have been fired for such performance even absent her leave. *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001); *Clay v. City of Chi. Dep't. of Health*, 143 F.3d 1092, 1094 (7th Cir. 1998).

Plaintiff's actual claim is that DEKKO retaliated against her for an expected future exercise of FMLA rights when it terminated her employment. DEKKO argues that it had a legitimate, non-discriminatory reason for terminating Plaintiff: poor performance at work. Plaintiff argues that DEKKO's proffered reasons for her termination are pretextual for retaliatory measures that DEKKO took against her for seeking FMLA leave.

Plaintiff claims she was suffering from a serious health condition that would require her to have back surgery. The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health

care provider." 29 U.S.C. §2611. Federal regulations further define "serious health condition." See C.F.R. §825.114; Price, 117 F.3d at 1023.

Plaintiff claims that DEKKO was on notice of her plans to request FMLA leave in the future. The FMLA requires a that an employee request leave at least thirty (30) days prior to taking leave. 29 U.S.C. §2612(b)(2)(D). The Seventh Circuit has held that the completion of an employer-provided leave request form, indicating that the cause was medical need, and attaching a doctor's note requiring the time off, was sufficient information to put the employer on notice that it was facing a possible FMLA leave situation. Price, 117 F.3d at 1025.[6] Then it is the employer's burden to inquire further. Id.

Plaintiff argues that there is a temporal connection between her exercise of FMLA rights (and her alleged remarks as to future use of FMLA leave) and her termination as evidence of discrimination. The Court is more persuaded by the temporal connection between the March 6, 2000 evaluation and her admitted lying and termination.

With regard to the March 6, 2000 performance evaluation, each party submitted a copy of the written evaluation in conjunction with their summary judgment briefs. The Court notes that Plaintiff and Bruce Mock, Plaintiff's then-supervisor, both signed the evaluation, and the date "March 6, 2000") is next to their signatures. The Court has reviewed the performance evaluation in full. Viewed in the light most favorable to Plaintiff, the evaluation

---

[6]The Seventh Circuit also has stated that it is sufficient notice if the employee provides ths employer with enough information to put the employer of notice that FMLA-qualifying leave is needed. Horwitz, 260 F.3d at 616; Stoops v. One Call Communications, Inc., 141 F.3d 309, 312 (7th Cir. 1998). This Court doubts that BAUGHER provided sufficient notice that she would be taking FMLA-qualifying leave. In addition, even if she did, DEKKO has stated a legitimate, non-discriminatory reasons for her termination, and BAUGHER has not shown that this reason is pretextual.

is critical of her performance in several areas, despite its recognition of her apparent efforts to improve. However, it is not the "positive evaluation" that Plaintiff contends it to be in her Response at page 5, nor does it support her claim that she was performing her job in a "satisfactory manner" as she contends. The written evaluation demonstrates that DEKKO was less than satisfied with her overall performance as its plant manager, as it listed numerous areas where improvement was needed. Plaintiff does not dispute DEKKO's evidence of its concerns with her job performance with any evidence of her own. Her claim that she had received a positive review on March 6, 2000, is belied by the written review itself.

As for the claim that Plaintiff was the target of DEKKO's retaliation for her FMLA leave in December, 1999, the Court is not persuaded to find retaliation. Not only did Plaintiff return to her regular job in January, 2000, but DEKKO provided an update of progress and its expectations for her continued performance as plant manager. The timing of her termination (two months after her return from FMLA leave) does not advance Plaintiff's claim in this regard, particularly in light of DEKKO's concerns with her job performance. If anything, the January 31, 2000 meeting showed that DEKKO was still willing to work with Plaintiff to achieve the performance objectives. In this regard, Plaintiff's claim lacks the "temporal proximity" found in *King*.

Plaintiff's case suffers from a lack of evidence to advance her position, even viewing the facts in the light most favorable to Plaintiff. In reviewing her deposition, BAUGHER was unable to state with certainty the individual (at DEKKO) she spoke to regarding her expected back surgery. Plaintiff's dep. at 33, line 24 to p. 34, line 2. She does not provide evidence that she completed paperwork to request the desired FMLA leave. In fact,

Plaintiff stated that she was uncertain of the date of her surgery (dep. at 34, lines 18-24), and she gave conflicting answers when questioned about the need for additional paperwork to obtain the desire leave ("I don't remember" and "yes"). Dep. at 34. lines 14-17.

BAUGHER also claims that she was <u>denied</u> leave under the FMLA. This is not accurate. BAUGHER requested and was permitted a period of FMLA leave that started in December, 1999. She testified at her deposition the steps she took, which included completing paperwork, in order to secure this period of leave. As to her future back surgery, although Plaintiff claims that DEKKO had "notice" of her intent to take FMLA leave at some point in the future, there is no evidence that any request was made in compliance with the statute. Plaintiff has not provided admissible evidence that she told her supervisors that she needed back surgery, or when the alleged communications were made. Therefore, DEKKO could not deny her request as it had not yet been made. Plaintiff argues that her termination was DEKKO "beating her to the punch" in terms of leave, that Plaintiff's employment was terminated before she could submit a formal request. There is no direct evidence to support this claim. BAUGHER has not carried her burden under the indirect method of proving discrimination, because she has not overcome DEKKO's evidence that it had a legitimate, non-discriminatory reason for terminating her that had nothing to do with leave. Further, Plaintiff must show that DEKKO would not have terminated her had she not engaged in protective activity. *McDonnell Douglas*, 411 U.S. at 891-92. Plaintiff has not provided evidence of this "causal link". Moreover, Plaintiff had not yet engaged in protected activity for purposes of the FMLA because she had not sufficient notice of an expected, future absence for back surgery.

Finally, Plaintiff has not established that DEKKO had a "mixed motive" for her termination. Plaintiff argues that, "There may be cases in which the multiple grounds offered by the defendant for the adverse action of which the Plaintiff complains are so intertwined or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Russell v. Acme-Evans Co.*, 51 F.3d 664, 70 (7th Cir. 1995). Plaintiff makes this claim because, during discovery, Defendant provided additional complaints regarding Plaintiff in support of its decision to terminate her employment. The mere fact that Defendant provided essentially a "laundry list" of complaints about Plaintiff does not detract from Defendant's evidence that it had ample grounds to terminate her based upon her performance, nor does the provision of additional reasons convert to "pretext" her poor performance, of which there is enough evidence to base summary judgment in favor of Defendant.

In *Snelling v. Clarian Health Partners, Inc.*, 184 F.Supp.2d 838 (S.D. Ind. 2002), Judge Tinder found there was a genuine fact issue as to whether the plaintiff, Snelling, had suffered retaliation after taking a period of FMLA leave. Clarian had claimed that it terminated Snelling poor performance and efficiency problems, as well as credibility issues. *Id.* at 848. To demonstrate that Clarian's proffered reasons for terminating his employment were pretextual, Snelling offered evidence revealing disparities in the application of Clarian's disciplinary process, suspicious timing in Snelling's termination, remarks by decision-makers regarding Snelling's impending medical leave, statistical evidence to show disparities between similarly-situated co-employee's efficiency requirements, and credibility issues. *Id.* The Court found this evidence persuasive. In particular, although there was evidence that Clarian was making efficiency a higher priority, its enforcement of a policy

requiring an improvement of efficiency to 70% was sporadic. While Snelling was criticized several times for failing to meet efficiency goals, which Clarian argues contributed to his termination, at least two of Snelling's co-workers ranked lower in efficiency than Snelling, but received no disciplinary action or were terminated. *Id.* In addition, Snelling presented evidence that one of the decision-makers with regard to his employment commented to another decision-maker something to the effect that during his upcoming period of FMLA leave, it would be possible to "get rid of [Snelling] while he was gone." *Id.* at 851. "When statements similar to these are made contemporaneously to a firing (Snelling was fired shortly after overhearing this statement) and uttered by a decision-maker, courts have found that such evidence establishes a discriminatory intent." *Id.* at 851 (citation omitted). This remark was particularly troublesome for the Court as the record revealed that Snelling's department was experiencing a very busy time at the time of his termination. Snelling also provided evidence that one of his supervisors provided an incomplete and inaccurate picture of Snelling's work to justify his removal. *Id.* at 852. The Court was persuaded by this and other specific evidence as evidence of pretext and denied summary judgment to Clarian. *Id.* at 853.

In contrast, BAUGHER has not provided specific evidence of an unequal application of uniform requirements of similarly-situated employees, i.e., no evidence that she was forced to meet certain efficiency requirements that her similarly-situated co-workers were not required to meet. She has not provided evidence that anyone at DEKKO with authority to make employment decisions in her regard uttered comments to indicate a discriminatory intent, and certainly no evidence that comments were made with a temporal link as in *Snelling*. She has not provided evidence that the amount or quality of her work was

-13-

misrepresented by her supervisors in a manner that justified her termination. There is no evidence on which BAUGHER can create any genuine issue of material fact to preclude summary judgment.

## *CONCLUSION*

Based upon the foregoing, this Court hereby GRANTS Defendant's motion Summary Judgment and DENIES the Motion to Strike. **IT IS SO ORDERED**.

DATED: June 4, 2003

s/Allen Sharp
**ALLEN SHARP, JUDGE**
**NORTHERN DISTRICT OF INDIANA**
G:\WPDOCS\Heather\CIVIL\FMLA\BAUGHERvDEKKO.sj.52803.wpd